OPINION
Defendant-appellant Sandra K. LaValley appeals from an order granting a petition filed by plaintiffs-appellees Thomas and Ellen Schommer to adopt LaValley's son, Paul Michael LaValley. LaValley argues that the trial court erred in finding that her consent to Paul's adoption was unnecessary on the ground that she had failed, without justifiable cause, to provide any "support" for Paul for the year immediately preceding the filing of the Schommer's petition. LaValley asserts that she did contribute to Paul's support during that period, by sending him "numerous gifts." Alternatively, LaValley argues that her failure to contribute to Paul's support was not without justifiable cause, because she was economically unable to do so during the one-year period in question, and because she was not under any court order to pay support, the Schommers never requested any support from her, and she believed that Paul was being well provided for by the Schommers.
We conclude that the trial court did not err in determining that LaValley had failed to contribute to Paul's support for the requisite one-year period, because the "numerous gifts" (toys that served as a combined Christmas and birthday gift) that LaValley sent to Paul were insufficient to fulfill the requirement in R.C.3107.07(A) that she provide for her child's "maintenance and support." We further conclude that the trial court did not err in rejecting LaValley's alternative argument that she was financially unable to make any contribution towards Paul's support, since LaValley, herself, acknowledged that she could have paid ten or twenty dollars a week in support if she had been asked. However, we conclude that the trial court did err in finding that LaValley lacked justifiable cause for her failure to provide support during the one-year period in question, because the Schommers never asked LaValley for financial assistance; no court order was ever issued against LaValley ordering her to pay support for Paul; LaValley reasonably believed that Paul was being well provided for by the Schommers, who had a combined annual income of nearly $100,000; and LaValley had no reason to believe that her financial assistance was necessary for the child's support. Accordingly, the judgment of the trial court is Reversed, and this cause isRemanded for proceedings consistent with this opinion.
 I
LaValley gave birth to Paul on January 24, 1991. Paul's father was Paul Robert Schommer. LaValley was convicted and sentenced for Sales and Delivery of Heroin in the State of Washington; she was incarcerated there on that charge from 1994-1996. After LaValley was incarcerated, Schommer, who was having his own heroin problem, took Paul to live with his brother, Thomas Schommer, and Thomas's wife, Ellen. In 1998, the Schommers sought and received custody of Paul.
On August 19, 1998, the Schommers filed a petition to adopt Paul. In their petition, the Schommers alleged that Paul's natural parents had failed, without justifiable cause, to provide for the maintenance and support of Paul for at least one year immediately preceding the filing of their petition. Paul's natural father filed a consent to the adoption. LaValley, however, filed an Objection to the Adoption.
At the hearing held on their petition for adoption, the Schommers testified that they had been married for over twenty-five years, and had a combined income of nearly $100,000. According to the Schommers, LaValley sent toys to Paul on one occasion in January, 1998. The Schommers described the gifts as a combined Christmas/birthday present. The toys LaValley sent were "a couple of Power Ranger dolls, plastic dolls, * * * a Megazoid[1] [sic] * * *, and a toy car." The Schommers also testified that LaValley never sent Paul anything in the way of support, like food or clothing. Thomas Schommer acknowledged that no support order had ever been issued against LaValley, and that he had never sought the issuance of one. Schommer stated that the reason he never sought a support order against LaValley was because she was living in Washington (until recently), and he believed that the costs of obtaining a support order would outweigh the benefits. There is nothing in the record to suggest that Schommer ever requested financial assistance from LaValley.
LaValley testified that during the one-year period in question, she sent Paul presents "at least three or four times, birthdays [sic] and Christmas[.]" She acknowledged that she "might have sent both" his Christmas and birthday presents at the same time. When asked why she did not send money for Paul's support, LaValley replied, "I knew that he was being well taken care of, and * * * I was trying to save every penny I could to get up here [Dayton]." LaValley also testified about several financial setbacks she had suffered, including funeral expenses for her mother, who died shortly after LaValley's release from prison; a fire that burned down her house while she was incarcerated, leaving her with "two pairs of pants and shirts to [her] name"; a car accident that "laid [her] up for awhile"; and an incident in which she was robbed near her home. Nevertheless, LaValley, who was making $600 per month at the time of the hearing, acknowledged under cross-examination that, if she had been asked to do so, she could have paid ten or twenty dollars per week in child support. Finally, LaValley acknowledged that she was "comfortable" with Paul's current placement with the Schommers, and that Paul did not want to move from his current home. Nevertheless, LaValley testified that she wanted to maintain her parental rights in case, at some point, Paul wanted to live with her. Specifically, LaValley stated, "I'm not really trying to take anything away from him. I want a chance though. I want a chance to see if it could work with me. I mean, I know I don't have much. I probably never will, but I still want a chance."
On March 2, 1999, the trial court approved the Schommer's petition for adoption, finding that LaValley's consent to the Schommer's request to adopt Paul was unnecessary, since LaValley had failed, without justifiable cause, to provide any support for Paul for the one-year period preceding the filing of the petition, and further finding that adoption was in Paul's best interest.
LaValley appeals from the trial court's decision.
 II
LaValley's First Assignment of Error states:
 THE TRIAL COURT ERRED IN RULING THAT MS. LaVALLEY'S CONSENT TO THE ADOPTION WAS NOT REQUIRED, BECAUSE MS. LaVALLEY "MAINTAINED AND SUPPORTED" HER MINOR CHILD DURING THE REQUISITE PERIOD.
R.C. 3107.07(A) provides that consent to adoption is not required of a parent who has failed, without justifiable cause, to communicate with the minor or to provide for the maintenance and support of the minor for a period of at least one year immediately preceding the filing of the adoption petition. The Schommers acknowledge that LaValley communicated with Paul during the one-year period preceding their filing of the adoption petition; thus, the issue that remains is whether LaValley failed, without justifiable cause, to provide maintenance and support for Paul for the requisite one-year period.
LaValley argues that the trial court erred by finding that she had failed to provide support and maintenance to Paul, since she had sent Paul "numerous gifts" during that period. We find LaValley's argument unpersuasive.
LaValley testified that she sent presents to Paul on three or four occasions; however, the only occasion that she could identify was the one to which the Schommers testified, to wit: the presents LaValley sent to Paul in January, 1998, which served as a combined Christmas and birthday gift. This court has stated that "[w]e are not prepared to hold that an isolated purchase of clothes and a Christmas gift fulfills [a] parent's obligation of support for their child." In re Adoption of Dues (Aug. 29, 1991), Montgomery App. No. 12112, unreported. Here, the toys that LaValley sent to Paul as a combined Christmas and birthday gift, similarly do not fulfill LaValley's obligation to provide support and maintenance for Paul.
LaValley contends, however, that the courts in this state have "consistently held" that any contribution toward the support of the child, no matter how meager, is sufficient to meet the maintenance and support requirement of R.C. 3107.07. See, e.g.,In re Adoption of Salisbury (1982), 5 Ohio App.3d 65 (Franklin County Court of Appeals). However, the Franklin County Court of Appeals has also held that the purchase of toys and clothes of approximately $130 in value was insufficient to fulfill a parent's duty to provide support and maintenance for a child, where the child already had a sufficient amount of clothing and toys. In reAdoption of Strawser (1987), 36 Ohio App.3d 232. See, also,Celestino v. Schneider (1992), 84 Ohio App.3d 192, 197
(indicating that "unnecessary gifts" do not constitute maintenance and support despite the rule that any contribution toward child support, no matter how meager, satisfies the maintenance and support requirement). Cf. In re Adoption of Mills (Oct. 25, 1993), Warren App. No. CA93-04-036, unreported (diapers, toys, clothing, and medical insurance constitute maintenance and support within the meaning of R.C. 3107.07).
In light of the foregoing, LaValley's First Assignment of Error is overruled.
 III
LaValley's Second Assignment of Error states:
 TRIAL COURT ERRED IN RULING THAT MS. LaVALLEY'S CONSENT TO THE ADOPTION WAS NOT REQUIRED, BECAUSE MS. LaVALLEY'S INABILITY TO SUPPORT THE MINOR CHILD DURING THE REQUISITE PERIOD WAS JUSTIFIED.
Pursuant to R.C. 3107.07(A), a petitioner for adoption has the burden of proving, by clear and convincing evidence, that the natural parent has failed without justifiable cause to provide maintenance and support for the child for the year immediately preceding the filing of the petition. In re Adoption of Bovett
(1987), 33 Ohio St.3d 102, paragraph one of the syllabus. Once the petitioner has met that burden, the burden of going forward with the evidence shifts to the natural parent to show some "facially justifiable cause" for his failure to provide maintenance and support during the one-year period; the burden of proof, however, remains with the petitioner. Id., paragraph two of the syllabus. The probate court must determine the issue of justifiable cause "by weighing the evidence of the natural parent's circumstances for the statutory period for which he or she failed to provide support." Id., paragraph three of the syllabus. The probate court's determination on the issue of justifiable cause will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. Id., paragraph four of the syllabus.
LaValley raises two arguments in support of her contention that she had justifiable cause for her failure to provide support for Paul during the one-year period immediately preceding the filing of the Schommer's petition. First, LaValley argues that she was financially unable to contribute to Paul's support during that time. Second, citing our decision in In re Adoption of Hadley
(May 6, 1991), Greene App. No. 90 CA 117, unreported, LaValley argues that because: (1) she had not been ordered to pay support; (2) the Schommers never requested support; and (3) she reasonably believed that Paul was being well taken care of by the Schommers, her failure to contribute towards Paul's support was not without justifiable cause.
As to LaValley's first argument, the evidence presented on LaValley's monthly income, food stamp assistance, and expenses reveals that LaValley had approximately $45 of discretionary income per month. Furthermore, LaValley, herself, acknowledged under cross-examination that she could have paid ten or twenty dollars per week in child support, "if she had been asked." Thus, the record reveals that LaValley had the means to provide some support for Paul, but failed to do so.
Nevertheless, in Hadley, supra, this court held:
 Where a child's needs are being adequately provided for by [custodial parents], who are in a better financial position than the natural parent, and the [custodial parents], being aware of the natural parent's financial circumstances, express no interest in receiving financial assistance from the natural parent, we conclude that the natural parent's failure to contribute towards the support of the child is not "without justifiable cause," for purposes of R.C. 3107.07(A).
We explained the rationale for our decision in Hadley, as follows:
 If a parent has any reason to believe that his or her financial assistance may be reasonably necessary for the support of the child, then the failure to provide any financial assistance for a full year evinces such a complete abdication of parental responsibility as to justify the termination of the parental relationship in favor of adoption, so long as the adoption is found to be in the best interests of the child. However, where, as here, the parent has no reason to believe that his or her financial assistance is necessary for the support of the child, and the persons caring for the child have expressed no interest in receiving any financial assistance or contribution from the parent, no such abdication of parental responsibility is suggested by the natural parent's failure to provide financial assistance that is neither needed nor requested.
The case sub judice is indistinguishable from Hadley; therefore, we find it controlling. Here, the Schommers never asked LaValley for financial assistance. Additionally, no court order was ever issued against LaValley, ordering her to pay support for Paul. LaValley reasonably believed that Paul was being well provided for by the Schommers, who had a combined annual income of nearly $100,000, and she had no reason to believe that her financial assistance was necessary for the child's support. Furthermore, while the evidence shows that LaValley could have paid some support for Paul, it also shows that LaValley was in dire financial circumstances during the one-year period in question. Therefore, the trial court's determination that LaValley failed, without justifiable cause, to make any contribution towards her child's support is against the manifest weight of the evidence.
In light of the foregoing, Lavalley's Second Assignment of Error is sustained.
 III
LaValley's First Assignment of Error having been overruled, but her Second Assignment of Error having been sustained, the judgment of the trial court is Reversed, and this cause isRemanded for proceedings consistent with this opinion.
BROGAN and YOUNG, JJ., concur.
Copies mailed to:
James E. Swaim
Branford D. Brown
Hon. George J. Gounaris
[1] This court confesses that it is without any knowledge concerning "Megazoids," but assumes that they are plastic toy figures of some kind.